1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10  SRIKANTH TANGIRALA,

11          Plaintiff,                          No. CIV S-06-0384 FCD GGH PS

12      vs.

13  JOHN E. POTTER, Postmaster General,                    ORDER and
    U.S. POSTAL SERVICE, et al.,              FINDINGS AND RECOMMENDATIONS
14
            Defendants.
15
    _____/
16

17          Defendants Postal Service and the Postmaster General move to dismiss parties

18  and claims and/or for summary judgment.  The motion, filed February 14, 2008, was submitted

19  for decision on the papers on February 29, 2008, upon the filing of plaintiff's opposition.  This

20  action, in which plaintiff is proceeding pro se, is referred to the undersigned pursuant to E.D. Cal.

21  L.R. 72-302(c)(21).

22          For the following reasons, the court recommends the motion be granted on behalf

23  of defendants.

24  BACKGROUND

25          This case proceeds on plaintiff's Second Amended Complaint (SAC"), filed

26  October 11, 2006, against the federal defendants only.  See Order filed April 25, 2007, adopting

                                        1

Findings and Recommendations filed March 9, 2007.  Plaintiff alleges his employer, defendant

U.S. Postal Service, discriminated against him due to his race, color, national original, religion

and disability.  Plaintiff is of Indian ancestry, born and raised in India, and is a Hindu.  He

commenced employment with the Postal Service in May 2003 and suffered a work-related injury

(hernia) on November 3, 2004.  Plaintiff worked through February 15, 2005, and his resignation

was accepted effective March 18, 2005.

Plaintiff seeks damages and costs from the Postal Service and to enjoin it "from

the conduct outlined herein," pursuant to causes of action under Title VII of the Civil Rights Act

(42 U.S.C. § 2000e et seq.), § 501 of the Rehabilitation Act of 1973 (29 U.S.C. § 791 et seq.), the

Equal Protection Clause of the Fourteenth Amendment, the Fair Labor Standards Act (29 U.S.C.

§ 201 et seq.), and the Federal Privacy Act (5 U.S.C. § 551 et seq.).

The Postal Service filed a separate, expedited, answer to Count Four (Privacy Act)

on November 13, 2006, as amended on November 30, 2006 (see 5 U.S.C. § 552(a)(4)(C)

(answers to complaints under Privacy Act shall be served within 30 days after service of the

complaint)), and an answer on all other claims on December 11, 2006.

Pursuant to the court's prior orders, all of the following defendants have been

dismissed from this action:  the Medical Board of California, Department of Managed Care of

California, San Quentin State Prison, and physicians Ansumana Gebeh, Susan Scholey, Cirspino

Ylanan, and Douglas Merill.  Only the federal defendants remain, viz., John E. Potter

(Postmaster General), the U.S. Postal Service, the Equal Employment Opportunity Commission

("EEOC"), and the Office of Workers' Compensation Program ("OWCP").

Federal defendants John E. Potter and the U.S. Postal Service move to dismiss the

EEOC and OWCP pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and

move to dismiss each of plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state

a claim, and/or pursuant to summary judgment under Fed. R. Civ. P. 56.  Included in the motion

was defendants' "Warning," informing plaintiff of the requirements for opposing a motion for

1  summary judgment and submitting supporting evidence, citing Fed. R. Civ. P. 56 and E. D. Cal.

2  L. R. 56-260.

3  FACTS

4       A.  Deposition Transcript

5            Plaintiff moves to strike the transcript of his deposition lodged in this action by

6  defendants on February 14, 2008.  Plaintiff explains that he "did not approve the deposition

7  report prior to finalizing it, because the counsel [for defendants] did not give her questions saying

8  that it is her attorney work instead she allowed the same to be sold by MOA Deposition

9  Reporters.  The plaintiff do[es] not authorize statements interpreted therein as he believes they

10  are CRUD (Created, Updated, Deleted and/or Edited) by Counsel and MOA in coalition."

11  Opposition, at p. 2.

12            Defendants deposed plaintiff on October 17 and 18, 2007.  During the deposition,

13  in response to plaintiff's questions, defendants' counsel explained that her questions and choice

14  of exhibits were selected in preparation of the defense, that plaintiff could suggest exhibits he

15  wanted included, and would be provided the opportunity to review the transcript and exhibits

16  before finalization, that plaintiff could call his own deposition with exhibits, and plaintiff would

17  be able to challenge defendants' exhibits and submit his own pursuant to proper motion before

18  the court.  See generally, TR. at 171:4 -177:9.  By letter dated October 26, 2007, plaintiff was

19  informed by the deposition reporter that the transcript of his deposition was ready for his review

20  within the next thirty days.  On November 25, 2007, plaintiff informed the reporter that he

21  "den[ied] any truthfulness of your interpretation," because he did "not feel confident about

22  interpretation and interaction between you and the counsel for defendants," and insisted that his

23  deposition be withdrawn.  See Deposition Transcript, Vol. 1, pp. 178-181.  The transcript was

24  nonetheless finalized and filed.

25            As explained below, deposition transcripts come within the category of

26  documents routinely relied upon by the courts in considering a motion for summary judgment,

1   because prepared by a neutral certified reporter whose accuracy cannot reasonably be questioned.

2   Despite his vigorous protest, plaintiff proffers no reasonable basis for making a different

3   inference in this case.  Even plaintiff relies, in his opposition, on portions of his deposition and

4   exhibits thereto.

5         Accordingly, plaintiff's motion to strike his deposition transcript will be denied.

6         B.  Plaintiff's Employment and Workers' Compensation History

7         Plaintiff began working for defendant Postal Service in May or June 2003, as a

8   "casual clerk" at the Sacramento airport facility.  Transcript of Tangirala Deposition ("TR") at

9   18:19-20:19.  Approximately one year later, in May or June 2004, plaintiff began working as a

10  part-time flexible letter carrier, a permanent employee but without a set schedule or specific

11  number of hours,[1] at Sacramento's Fort Sutter Post Office.  TR at 20:20-21:3, 21:25-22:15, 25:9-

12  11.  Plaintiff's supervisors at the Fort Sutter location included Michael Hoffman, Annette Wing,

13  Janine Phillips and Eric Easton.  TR at 22:16-24:12.

14        On November 3, 2004, plaintiff experienced groin pain while pulling mail from

15  his work vehicle.  He obtained medical care that evening, was diagnosed with a hernia,

16  prescribed Motrin and told he could return to modified work with no lifting over 15 pounds, and

17  no bending, stooping, pushing or pulling.  TR at 37:16-17, 24-24, 38:1 - 39:2; Exh. 25.  Plaintiff

18  submitted an accident report on November 7, 2004.  TR at 40:11-22, and Exh. 1. The Postal

19  Service sent plaintiff to U.S. Health Works on November 8, 2004, whose physician diagnosed an

20  inguinal hernia and restricted plaintiff to modified work without stooping or bending, and with

21  lifting, pushing and pulling limited to 15 pounds.  TR at 40:23-42:13; and Exhs. 2, 25.

22        Plaintiff returned to work November 4, 2004, the day after his injury, and worked

23  through February 15, 2005, when he stopped working based upon a medical opinion that he

24  _____

25        [1]  Part-time flexible letter carriers do not work a set schedule nor are they guaranteed a
    specific number of hours.  Decl. of Annette Wing (Supervisor, Sacramento Parkway Station Post
26  Office) , Exh. 5 to Defendants' Motion.

1  required surgery.  TR 39:3-5, 40:7-10, 46:20-24; 47:2-3; Exh. 31.

2          On March 2, 2005, plaintiff filed an EEO complaint of disability discrimination,

3  alleging defendants manipulated his work hours, misled him on his injury compensation claim,

4  and threatened to designate him "absent without leave" ("AWOL").

5          On March 3, 2005, plaintiff's supervisor, Michael Hoffman, wrote plaintiff a

6  letter noting that he had been absent from work without justification since February 16, 2005.

7  Exh. 31.  Mr. Hoffman informed plaintiff:  "You are hereby directed to report for work on your

8  next regularly scheduled day after your receipt of this letter . . . . If you are unable to report as

9  scheduled, you must provide me with acceptable detailed medical documentation to support your

10  absence from work. . . . not later than March 11, 2005."  Exh. 13 (original emphasis deleted).

11          On March 7, 2005, plaintiff submitted a DOL "CA-7 form" seeking non-

12  intermittent (continuous) compensation for the period February 19, 2005 through March 4, 2005,

13  attaching a brief form completed by Dr. Satya N. Chaterrjee that indicated plaintiff was totally

14  incapacitated as of the date of his examination, February 18, 2005, and would remain so until he

15  had surgery.  Exh. 7.  (But see, Exhs. 35 and 36, wherein Dr. Chaterrjee limited plaintiff only to

16  "lifting and carrying a maximum of 10 lbs" and "totally agree[d] . . . that [plaintiff] should be

17  able to do a desk job lifting only 5 pounds of weight.")

18          By letter dated March 15, 2005, plaintiff informed the Postal Service that its

19  refusal to accept his medical documentation and offer plaintiff a position consistent with his

20  limitations made him feel "uncomfortable and unsafe," and requested that the Postal Service

21  "permit me to take LWOP [leave without pay] or put me in an inactive status and if both are not

22  possible accept it as resignation until my complaint with EEOC against Management Officials is

23  resolved.  Also, I would like to request you to give me a chance to try and pursue my career

24  opportunity with other agency whose job offer I decided to accept though pay is less and long

25  distance travel is involved and I can be safe by being away from current unsafe situation such as

26  ongoing harassment/discrimination."  Exh. 32.

1    Plaintiff testified in deposition that he commenced work as an office assistant at

2   San Quentin State Prison on March 21, 2005, where he worked until March 2006.  TR at 30:6-

3   25.

4    By letter dated June 22, 2005, Mr. Hoffman denied plaintiff's request for leave

5   without pay and "accept[ed] [plaintiff's] letter received March 18, 2005 . . .  as your letter of

6   resignation and notification to us that you have accepted alternate employment in lieu of your job

7   here."  Exh. 33.

8    On September 7, 2005, plaintiff requested an appointment with a Dispute

9   Resolution Specialist, formalized by filing an EEOC counseling request on September 15, 2005,

10   wherein plaintiff alleged retaliation discrimination for filing his disability discrimination claim,

11   as demonstrated by Mr. Hoffman's denial of plaintiff's request for leave without pay and "forced

12   resignation" from employment with the Postal Service.  On October 21, 2005, plaintiff filed an

13   EEOC complaint broadly alleging defendants' actions demonstrated discrimination based on

14   race, color, religion, national original, disability and retaliation.

15    Meanwhile, plaintiff filed a workers' compensation claim on November 8, 2004,

16   which was accepted by the Office of Workers' Compensation Program ("OCWP"), Department

17   of Labor ("DOL"), on December 15, 2004.  TR at 42:16-43:7, 16-25, Exhs. 4 and 5.  Plaintiff

18   then filed claims with OCWP to obtain intermittent compensation for the periods December 28,

19   2004 through February 4, 2005, and February 5, 2005 through March 4, 2005, and non-

20   intermittent (continuous) compensation for the period February 19, 2005 through March 4, 2005

21   (amending his prior claim based on the recommendation of Dr. Satya N. Chaterrjee), and for the

22   period March 5, 2005 through March 18, 2005.  TR at 47:7-25, 54:23-55:6, 55:24-57:20, 58:12-

23   60:24.  Exhs. 5, 6, 7, and 8.  Thus, plaintiff claimed total disability commencing February 19,

24   2005.

25    The OWCP sought additional medical evidence from plaintiff pursuant to letters

26   dated March 3, 2005 and June 15, 2005, the latter including a referral of plaintiff to DOL

orthopedic physician Dr. John Randall Chu.  Exhs. 11 and 12.  Pursuant to examination of

plaintiff on June 29, 2005, Dr. Chu concluded that, absent surgical treatment, plaintiff is

permanently limited to work that requires no more than "lifting to 10 pounds on an occasional

basis, pushing and pulling to 10 pounds on an occasional basis, and bending or stooping to an

occasional basis." Exh. 15 , Attached Report at p. 7.[2]

Plaintiff's combined requests for disability compensation for the consecutive

period December 28, 2004 through March 18, 2005, were denied initially on September 23, 2005

(stating there was insufficient medical evidence to support total disability), and again on October

25, 2005.  Exhs. 14, 15, 16.  Pursuant to plaintiff's request for reconsideration by letter dated

February 26, 2006 (Exh. 17), the OWCP informed plaintiff it required additional information to

process his claim for recurrence of disability because he had resigned from the Postal Service

effective March 18, 2005 (Exh. 18).  On March 16, 2006, plaintiff filed a claim with OWCP for

non-intermittent (continuous) compensation for an open period commencing March 1, 2006.

Exh. 19.  This claim was denied April 13, 2006, on the ground that substantial evidence

demonstrated plaintiff remained able at all pertinent times to perform light duty work.  Exh. 20.

---

[2]  Dr. Chu recounted the work restrictions recommended by plaintiff's other physicians
(Exh. 15, Attached Report at pp. 2-3):

Dr. Jack Berger, dated November 4, 2004: "modified duty" acceptable immediately

Dr. Gerald Telep, dated November 8, 2004:  modified work (no stooping, bending, lifting,
pushing or pulling more than 15 pounds) until November 15, 2004, then return to full work

Dr. Douglas Merrill, dated November 12, 2004:  modified work duty (lifting less than 5 pounds,
occasional bending, and no heavy pushing or pulling) pending surgical evaluation

Dr. Asumana Gebeh, dated January 14, 2005:  patient does not want surgery; continued modified
work status, occasional bending, twisting, squatting, kneeling and lifting up to five pounds

Dr. Asumana Gebeh, dated January 21, 2005:  permanent and stationary work restrictions include
occasional lifting up to 25 pounds, five-minute breaks for every one-half hour standing

Dr. Satya Chatterjee, dated March 25, 2005:  no lifting; surgery recommended as soon as
possible

1  Plaintiff appealed the decision (Exh. 21, 22), which OWCP affirmed September 28, 2006 (Exh.

2  25).  On January 12, 2007, the Employees' Compensation Appeals Board ("ECAB") denied

3  plaintiff's claim (Exh. 27), and on May 16, 2007, ECAB denied plaintiff's petition for

4  reconsideration (Exh. 30).

5           Plaintiff is 36 years of age.  TR at 11:16-17.

6       C.  EEOC Proceedings

7           1.  EEOC Case No. 4F-956-0032-05 (Rehabilitation Act Claim)
                 (Documents set forth in Exhibit A to Defendants' Motion)

8

9           On March 2, 2005, as amended March 15, 2005, plaintiff filed a claim of

10  discrimination based on physical disability (hernia) with the Postal Service's EEO office,

11  identifying the following "issues:"

12      1.      On December 9, 2004 and "many other dates," the Postal Service
                manipulated plaintiff's work hours and misled him on his injury
13              compensation claim.

14      2.      On March 7, 2005, plaintiff's manager, Michael Hoffman, notified
                plaintiff by email that he had no documentation of plaintiff's Injury
15              Compensation, although the Injury Compensation Specialist had at that
                time the February 22, 2005 note of plaintiff's doctor.
16
        3.      On an unspecified date, plaintiff's manager refused to accept his
17              documentation and threatened to charge plaintiff as AWOL.

18          On May 11, 2005, the Postal Service's EEO Office dismissed plaintiff's

19  complaint for failure to state a cause of action.  The Office found that the Department of Labor

20  had already adjudicated the first and second issues pursuant to the OWCP's appropriate

21  processing of the claims, and these matters were not subject to collateral attack under EEOC

22  regulations.  The Office dismissed plaintiff's third issue on the ground he had failed to establish

23  standing as an "aggrieved employee" under 29 C.F.R. § 1614.103 by alleging an injury in fact;

24  the Office found that plaintiff had not suffered any direct, personal deprivation or concrete

25  impact on his employment status and, at most, his supervisor's alleged threat of discipline was a

26  nonactionable preliminary step to taking a personnel action under 28 C.F.R. § 1614.107(e).

8

1    Plaintiff appealed to the EEOC's Office of Federal Operations ("FFO") which, on

2    October 14, 2005, affirmed the dismissal of Issues 2 and 3, and the portion of Issue 1 addressing

3    plaintiff's compensation claim.  However, the Commission reversed the dismissal of that portion

4    of Issue 1 alleging manipulation of plaintiff's work hours, and remanded for further processing.

5    An EEOC investigation was conducted and report issued December 29, 2005, and

6    transmitted to plaintiff with notice he had thirty days within which to request a hearing before an

7    EEOC administrative law judge or obtain a final agency decision without a hearing; plaintiff

8    requested neither.

9    On May 18, 2006, the EEOC issued a final decision dismissing the remanded

10   portion of Issue 1 for failure to state a claim (citing 29 C.R.F. § 1614.107(a)(1)), on the ground

11   that the "only changes made to your clocks rings were to correct the operation codes associated

12   with your actual work to correct your inaccuracies" (citing Report of Investigation ("ROI"),

13   Affidavits B and C, and the Investigative Summary Matrix), as confirmed by plaintiff's

14   acknowledgment that his begin tour and end tour rings accurately reflected the time he was at

15   work, thus resulting in "no effect on your pay" and "therefore . . . no[] effect whatsoever on any

16   term or condition of your employment."[3]

17   _____

18   [3] The decision also set forth the EEOC's alternative reasoning, applicable "only if an
     appellate body disagrees with the procedural dismissal," and which includes the following

19   findings:  (1) plaintiff failed to make a prima facie showing that his hernia rendered him "a
     qualified person with a disability" because (a) the medical evidence failed to demonstrate

20   plaintiff was "substantially limited in any major life activity," including working, and (b) plaintiff
     was "not otherwise qualified" to perform the essential functions of the Carrier position, with or

21   without accommodation; (2) even assuming plaintiff was a qualified person with a disability, the
     Postal Service already accommodated plaintiff beyond the requirements of the Rehabilitation Act

22   by creating a position for plaintiff within his medical restrictions; (3) plaintiff failed to make a
     prima facie showing of discrimination because he failed to demonstrate he was treated less

23   favorably than similarly situated individuals outside his protected group, having failed even to
     identify similarly situated employees (the Analyst noted that plaintiff had been mailed an

24   affidavit request on November 22 and December 13, 2005; plaintiff did not submit his affidavit
     until February 14, 2006, after ignoring an extension request form sent December 18, 2005); and

25   (4) plaintiff failed to rebut as pretextual the Postal Service's evidence that the challenged action
     affected no term or condition of plaintiff's employment; rather, plaintiff conceded that the Begin

26   Time and End Time clock rings accurately reflected his work time, and the only changes to his
     clock rings were "to correct the operation codes associated with your actual work to correct your

1    Plaintiff was informed that he could seek review from the EEOC within 30 days

2  or file a civil action in federal court within 90 days.  Plaintiff chose the latter.

3         2.  EEOC Case No. 4F-956-0412-05 (Title VII Claims)
                (Documents set forth in Exhibit B to Defendants' Motion)
4

5    Plaintiff commenced this action following defendants' acceptance of his

6  resignation and the initial denial of plaintiff's disability discrimination claim.

7    On September 7, 2005, plaintiff requested an appointment with a Dispute

8  Resolution Specialist, and on September 15, 2005, plaintiff filed a formal EEO Pre-Complaint

9  Counseling Request, alleging retaliation discrimination in response to the filing of his disability

10  discrimination claim.  Plaintiff alleged the retaliation discrimination occurred September 6, 2005,

11  and consisted of Mr. Hoffman's denial of plaintiff's request for leave without pay, despite

12  purported earlier approval of the request, thus forcing plaintiff's resignation.[4]  Although Mr.

13  Hoffman had informed plaintiff of these matters by letter dated June 22, 2005, plaintiff's

14  counseling request states the discrimination occurred September 6, 2005, upon plaintiff's receipt

15  of a "notice of personnel action" and "cancellation of full-time employment action."

16    Following an investigation of plaintiff's claim and "Final Interview," an EEO

17  Specialist made the following factual determinations:

18        Mr. Henry Amos, Manager, Labor Relations was interviewed . . . [¶ ] [He] said
          that you were supposed to have an operation, which you did not have.  He said
19        you filed a claim with the Dept. of Labor (DOL) and that claim was not accepted

20  ────────────────

21  inaccuracies." May 18, 2006 decision, EEOC Case No. 4F-956-0032-05 (Exh. A to Defendants'
    Motion).

22     [4] Plaintiff's statement in support of his Pre-Complaint Counseling Request provided in
    full:
23

24        Although "leave without pay" was approved upon receipt of my letter requesting
          to grant me "LWOP" or to put me on inactive status or accept resignation dated
          03/15/05, Michael A. Hoffman denied the approved LWOP based on
25        unreasonable reasons and I am being forced out, to resign and sent with Notice of
          Personal [sic] Action mentioning "Employee resigned" and also received
26        cancellation of fulltime employment action.

10

1  by the DOL.

2  He said that you did request for LWOP and that request was not approved.  Mr.
   Amos said that you requested LWOP, by letter, dated 3/15/2005.  In that letter he
3  said, you requested LWOP or to be placed in "inactive status" and that if neither
   was possible to accept that letter as a letter of resignation.  He said that Ms.
4  Michael Hoffman, Manager, Customer Service then sent you a letter, dated
   6/22/2005, denying your request for LWOP and accepted your letter as resignation
5  from the USPS.  Mr. Amos provided a copy of both your letter and Mr.
   Hoffman's letter.

6

7  Plaintiff was provided a Notice of Right to File a Formal Complaint, dated October 6, 2005.

8          Plaintiff filed a formal EEO Complaint of Discrimination on October 21, 2005,

9  broadening the scope of his claim to allege he was improperly denied leave without pay and

10  forced to resign as a result of discrimination based on race, color, religion, national original,

11  disability and retaliation, and expanding the dates of the alleged discrimination to "09/06/05 and

12  many other dates before that."  The charge provides in full:

13  Although "leave without pay" was approved upon receipt of my letter requesting
    to grant me LWOP or to put me on inactive status or accept resignation, Michael
14  K. Hoffman denied the approved LWOP based on unreasonable reasons and I was
    sent with Notice of Person[n]el Action saying employee resigned and also
15  received cancellation of fulltime employment refer [sic].

16          On November 30, 2005, the Postal Service's EEO Office issued a final agency

17  decision dismissing plaintiff's complaint "for untimely contact with an EEO counselor," citing

18  29 C.F.R. § 1614.105(a)(1) (discrimination complaint must be brought to EEO counselor within

19  45 days of the alleged discriminatory conduct or challenged personnel action), 29 C.R.F. §

20  1614.107(a)(2) (agency shall dismiss untimely complaint), and several administrative holdings.

21  The decision explains that plaintiff was informed by letter dated June 22, 2005 that his March 15,

22  2005 offer of resignation had been accepted, yet plaintiff did not contact an EEO counselor until

23  September 7, 2005, seventy-seven days later.  The Office found no basis for tolling the 45-day

24  period, nor any grounds for concluding plaintiff did not understand the implications of the June

25  22, 2005 letter.

26  \\\\\

11

1         Plaintiff was informed that he could seek review from the EEOC within 30 days

2   or file a civil action in federal court within 90 days.  Plaintiff chose the latter.

3         D.  <u>Judicial Review</u>

4         Plaintiff filed his initial complaint in this court on February 23, 2006, timely

5   challenging the administrative holding in his retaliation discrimination claim.  Plaintiff also

6   presented the details of his disability discrimination claim, but that case did not reach a final

7   administrative decision until May 18, 2006.  Both cases were timely challenged in plaintiff's

8   Amended Complaint filed May 25, 2006, and are properly presented in plaintiff's operative

9   Second Amended Complaint filed October 11, 2006.

10  <u>LEGAL STANDARDS</u>

11        A.  <u>Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)</u>

12        "When subject matter jurisdiction is challenged under Federal Rule of Procedure

13  12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.  A

14  plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the

15  existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on

16  having the defect called to its attention or on discovering the same, must dismiss the case, unless

17  the defect be corrected by amendment."  <u>Tosco Corporation v. Communities for a Better</u>

18  <u>Environment</u>, 236 F.3d 495, 499 (9th Cir. 2001) (citations and internal quotations omitted).

19        Ordinarily, when "matters outside the pleadings are presented to . . . the court, the

20  motion shall be treated as one for summary judgment."  Fed. R. Civ. P. 12(c).  However, when

21  there is a factual question about whether a court has jurisdiction, the trial court may consider

22  affidavits or any other evidence properly before the court.  <u>Sommatino v. United States</u>, 255 F.3d

23  704, 710 (9th Cir. 2001); <u>Am. Med. Colleges v. United States</u>, 217 F.3d 770, 778 (9th Cir. 2000).

24  Thus, unlike the strict limitations under Rule 12(b)(6) against considering matters outside the

25  complaint, a Rule 12(b)(1) motion may refer to evidence extraneous to the complaint without

26  converting it into a Rule 56 motion for summary judgment.  <u>Sun Valley Gas v. Ernst Enters.</u>,

1  Inc., 711 F.2d 138,139 (9th Cir. 1983).

2        B.  Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

3             In order to survive dismissal for failure to state a claim pursuant to Federal Rule

4  of Civil Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the

5  elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to

6  relief above the speculative level." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955,

7  1965 (2007).  "'The pleading must contain something more. . . than . . . a statement of facts that

8  merely creates a suspicion [of] a legally cognizable right of action.'"  Id., quoting 5 C. Wright &

9  A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).

10             In considering a motion to dismiss, the court must accept as true the allegations of

11  the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

12  Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

13  motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

14  89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

15  that general allegations embrace those specific facts that are necessary to support the claim.'"

16  National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

17  (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

18  Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v.

19  Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

20             The court may consider facts established by exhibits attached to the complaint.

21  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

22  consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

23  1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings, orders, and other

24  papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

25  1986).  However, the court need not accept legal conclusions "cast in the form of factual

26  allegations."  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

1    C.  Summary Judgment Pursuant to Fed. R. Civ. P. 56

2          Summary judgment is appropriate when it is demonstrated that there exists "no

3    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4    matter of law."  Fed. R. Civ. P. 56(c).

5               Under summary judgment practice, the moving party
               always bears the initial responsibility of informing the district court
6               of the basis for its motion, and identifying those portions of "the
               pleadings, depositions, answers to interrogatories, and admissions
7               on file, together with the affidavits, if any," which it believes
               demonstrate the absence of a genuine issue of material fact.

8

9    Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

10   P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

11   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

12   depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

13   should be entered, after adequate time for discovery and upon motion, against a party who fails to

14   make a showing sufficient to establish the existence of an element essential to that party's case,

15   and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

16   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

17   necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

18   should be granted, "so long as whatever is before the district court demonstrates that the standard

19   for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

20   2553.

21          If the moving party meets its initial responsibility, the burden then shifts to the

22   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

23   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

24   (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

25   not rely upon the allegations or denials of its pleadings but is required to tender evidence of

26   specific facts in the form of affidavits, and/or admissible discovery material, in support of its

14

1   contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

2   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

3   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

4   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

5   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

6   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

7   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).[5]

8           On February 14, 2008, defendants advised plaintiff of the requirements for

9   opposing a motion pursuant to Fed. R. Civ. P. Rule 56.  See Docket No. 83, Exhibit 3; See also

10   E. D. Cal. L. R. 56-260(b); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

11   Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

12   ANALYSIS

13       A.  Dismissal of EEOC and OWCP

14           The Postal Service and Postmaster General move to dismiss the Equal

15   Employment Opportunity Commission ("EEOC") and Office of Workers' Compensation

16   Program ("OWCP") pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

17           The EEOC and OWCP are both federal administrative agencies that rendered

18   administrative decisions in this case.  Plaintiff challenges their actions as follows (Second

19   Amended Complaint, at p. 8):

20           ¶ 36.  Plaintiff requests the United States District Court, Eastern
        District of California, to decide if the defendant EEOC's investigations and issued
21       decisions on complaints filed by Plaintiff with complaint Nos. 4F-956-0032-05
        and 4F-956-0412-05 are improper.

22

23           [5] In the endeavor to establish the existence of a factual dispute, the opposing party need
    not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed
24   factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the
    truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to
25   'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
    trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory
26   committee's note on 1963 amendments).

¶ 37.  Plaintiff requests the United States District Court, Eastern District of California, to decide if the defendant OWCP investigations and issued decisions on requests filed by Plaintiff under claim No. 132117426 are improper and violated Plaintiff's rights.

Thus, plaintiff seeks this court's review of the administrative decisions issued in this case by the EEOC and OWCP.

A decision of the OWCP is appealable only to the Employees Compensation Appeals Board ("ECAB"), as was accomplished in this case, and such decisions are final.  See 5 U.S.C. §§ 8149, 8128; 20 C.R.F. §§ 501.3, 501.6(c).  Judicial review of these decisions is expressly precluded by statute.  See 5 U.S.C. § 8128(b) ("The action of the Secretary or his designee in allowing or denying a payment under this subchapter is – (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.")  Absent a constitutional claim or violation of a clear statutory mandate or prohibition, judicial review is barred.  Staacke v. U.S. Secretary of Labor, 841 F.2d 278, 281 (9th Cir. 1988); Sheehan v. U.S., 896 F.2d 1168, 1174 (9th Cir. 1990).

Plaintiff does not challenge the OWCP's decisions based on a constitutional claim, nor does he allege violation of a clear statutory mandate or prohibition.  As plaintiff appears to challenge only the substance of OWCP's decisions, that is, "allowing or denying a payment" to plaintiff, judicial review is precluded.  Rodrigues v. Donovan, 769 F.2d 1344, 1347 (9th Cir. 1985).

Accordingly, the OWCP should be dismissed from this action as an improper party over which this court lacks subject matter jurisdiction.

Accordingly, the EEOC should also be dismissed from this action.

B.  Discrimination Claims:  Overview and Dismissal of Fourteenth Amendment Claim

Plaintiff has, to a significant extent, merged his two EEOC cases before this court, now broadly alleging discrimination based on race, color, national origin, religion, disability and

1    retaliation for all challenged conduct.  As set forth below, this court is limited to considering only

2    those issues that have been administratively presented and exhausted.

3            Additionally, plaintiff's claims pursuant to the Equal Protection Clause of the

4    Fourteenth Amendment (and therefore, implicitly, 42 U.S.C. § 1983) are encompassed within his

5    Title VII and Rehabilitation Act claims.  Title VII creates "an exclusive, preemptive

6    administrative and judicial scheme for the redress of federal employment discrimination" based

7    on race, color, religion, sex or national origin.  <u>Brown v. General Services Administration</u>, 425

8    U.S. 820, 825, 96 S.Ct. 1961 (1976); <u>White v. General Services Administration</u>, 652 F.2d 913,

9    916 (9th Cir. 1981) (precluding constitutional claims brought pursuant, inter alia, to 42 U.S.C. §

10   1983).  Similarly, the Rehabilitation Act provides the exclusive judicial remedy for claims based

11   on a federal employee's disability.  <u>See</u>, e.g. <u>McGuinness v. United States Postal Service</u>, 744

12   F.2d 1318, 1322-1323 (7th Cir.1984); <u>Boyd v. U.S. Postal Service</u>, 752 F.2d 410, 413-414 (9th

13   Cir. 1985).

14           Thus, "Title VII and the Rehabilitation Act provide the exclusive judicial

15   remedies for [] claims of employment discrimination and retaliation . . .  <u>See</u> <u>Brown v. General</u>

16   <u>Services Administration</u>, 425 U.S. 820, 835, 96 S.Ct. 1961 (1976) (holding that Title VII

17   'provides the exclusive judicial remedy for claims of discrimination in federal employment');

18   <u>Boyd v. U.S. Postal Serv.</u>, 752 F.2d 410, 413 (9th Cir.1985) (citing Brown ); <u>White v. General</u>

19   <u>Servs. Admin.</u>, 652 F.2d 913, 917 (9th Cir.1981) (holding that Title VII is the exclusive judicial

20   remedy for filing an EEO complaint)."  <u>Niimi-Montalbo v. White</u>, 243 F.Supp.2d 1109, 1118

21   (D.Hawaii 2003).

22           Accordingly, plaintiff's Fourteenth Amendment Equal Protection claim should be

23   dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

24       C.  <u>Rehabilitation Act Claim</u>

25           Section 501 of the Rehabilitation Act is the exclusive remedy for a federal

26   employee to bring a disability discrimination claim against his employer.  <u>Boyd v. U.S. Postal</u>

1   Service, 752 F.2d 410, 413 (9th Cir.1985); see also, Johnson v. U.S. Postal Service, 861 F.2d

2   1475, 1478 (10th Cir. 1988) ("only section 501 provides a private cause of action for federal

3   employees bringing an action alleging employment discrimination based on handicap").

4          "To establish a prima facie case of disability discrimination, a plaintiff must show

5   (1) he is disabled within the meaning of the statute; (2) he is otherwise qualified for the position;

6   (3) he was adversely treated because of his disability; and (4) he worked for the federal

7   government." Wilborn v. Ashcroft, 222 F. Supp. 2d 1192, 1207 (S.D.Cal.2002), citing Reynolds

8   v. Brock, 815 F.2d 571, 573-74 (9th Cir.1987). If a plaintiff can establish a prima facie case of

9   disability discrimination, "the burden shifts to the defendant to articulate a legitimate,

10  non-discriminatory reason for the employment decision. The burden then shifts back to the

11  plaintiff to produce evidence sufficient to allow a reasonable factfinder to conclude that

12  defendant's articulated reason is pretextual." Ibid. "In other words, [ ] plaintiff 'must tender a

13  genuine issue of material fact as to pretext in order to avoid summary judgment.' " Wallis v. J.R.

14  Simplot Co., 26 F.3d 885, 890 (9th Cir.1983), quoting Steckl v. Motorola, Inc., 703 F.2d 392,

15  393 (9th Cir.1983). "[W]hen evidence to refute the defendant's legitimate explanation is totally

16  lacking, summary judgment is appropriate even though plaintiff may have established a minimal

17  prima facie case." Id. at 890-91.

18         Plaintiff claims that defendants' changes to his work hours, tasks and operation

19  codes describing his work – as exhibited primarily by changes to his "clock rings" –

20  discriminated against plaintiff based on his disability (hernia and resulting limitations).[6] The

21  EEOC dismissed these allegations for failure to state a claim (29 C.R.F. § 1614.107(a)(1)), on the

22  ground that – even assuming plaintiff had established a prima facie case of disability

23  discrimination (which the Commission found he had not) – plaintiff had failed to demonstrate

24  _____

25         [6] Plaintiff also sought to challenge this conduct pursuant to his Title VII claim, alleging
    discrimination based on race, color, national origin and religion; for the reasons discussed below,
    these charges were not timely or properly made at the administrative level and will not be
26  addressed by the court.

1   defendants' conduct was pretextual, that is, for any purpose other than correcting inaccuracies,

2   and therefore that the changes had no adverse effect on any term or condition of plaintiff's

3   employment.

4          For the reasons that follow, the court finds that substantial evidence of record

5   supports the EEOC's decision and plaintiff has failed to demonstrate the existence of any

6   material dispute that would undermine that decision.

7          Annette Wing, one of plaintiff's supervisors, has submitted a declaration

8   describing defendants' clock ring procedures and lunch break policy (Wing Decl. (Attchmt. to

9   Plaintiff's Motion), at pp. 2-3:

10         ¶ 5. To track time and attendance, Postal Service employees are required to swipe
           their time cards when they begin and end their daily tour of duty, which is
11         reflected on the employees' clock rings.  In addition, the clock rings record codes
           for when employees swipe out for lunch and in from lunch.  The clock rings also
12         record codes for different tasks that employees perform.  If employees, during
           their daily tour of duty, move from one task to another task bearing a different
13         task code, then they swipe their time cards to record that movement.  If an
           employee fails to clock in his begin tour and end tour time, or to clock out and in
14         for lunch, or to clock his movement to a different task code, then a supervisor will
           manually adjust the employee's clock rings to correct the inaccuracies.
15
           ¶ 6. Employees are required to take a lunch break.  However, there is a policy that
16         in order to work through a lunch break employees are required to either fill out a
           3971 (Request for or Notification of Absence) form or a 3189 (Change of
17         Schedule) form for "no lunch" and submit it to a supervisor for approval.  If
           approved, the clock rings will be adjusted by a supervisor to properly reflect an
18         approved "no lunch."  This policy was developed to satisfy concerns that
           employees are voluntarily requesting to work through their meal break and are not
19         forced to work without a break.

20         Noah Rodriquez, a Postal Service Labor Relations Specialist, has also submitted a

21  declaration describing the clock ring procedures and use of operational codes (Rodriguez Decl.,

22  Attchmt. to Defendants' Reply, at p. 2):

23         ¶ 3. The Postal Service uses a computer-based Time and Attendance Collection
           Systems (TACS) to track postal employees daily time and attendance.  Employees
24         are required to swipe their time card/ID badges when they begin and end their
           daily tour of duty, which is reflected on the employees' clock rings.  In addition,
25         the clock rings also record codes for different operations that employees perform.
           If employees, during their daily tour of duty, move from one operation to another
26         operation bearing a different operation code, then they swipe their time cards/ID

19

badges to record that movement.

Plaintiff alleges defendants improperly altered his clock rings to add lunch breaks he did not take, change his beginning times, and alter his task codes, resulting in the assignment to plaintiff of a reduced number of work hours, heavy tasks outside his physical limitations, and administrative tasks for which plaintiff should have been promoted and paid a higher wage.

### 1. The EEOC Decision

The EEOC found that plaintiff had failed to demonstrate defendants engaged in any improper conduct, reasoning:

> Your supervisor, Annette Wing, stated that your clock rings were corrected to reflect the appropriate operations codes. (ROI, Affidavit B). Michael Hoffman, your manager, also noted that there were times when you incorrectly completed your daily clock rings and management would have to go in and correct those errors. (ROI, Affidavit C). You stated that your clock records were "manipulated" to a "different task code" but with the same beginning and "exactly" the same end times. (ROI, Post Investigation). As previously stated, the operation codes were changed to reflect the type of work you were doing and you admitted that the change did not affect either your starting or your end times nor did the changes subsequently manipulate your hours.
>
> Having articulated the agency's legitimate, facially non-discriminatory explanation, all presumptions of discrimination drop from the case. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507, [], 113 S.Ct. 2742 (1993). The burden shifts to the complainant to prove by a preponderance of the evidence that the agency's proffered reasons are merely a pretext for discrimination. Pretext may be demonstrated by showing "such weaknesses, impossibilities, inconsistencies, incoherencies, or contradictions in the agency's proffered [legitimate] reasons for its action that a reasonable factfinder could rationally find them [un]worthy of credence and then infer that the employer did not act for the asserted non-discriminatory reason[s]." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) [internal quotations and citations omitted].
>
> Other than mere speculation, you have provided no evidence and failed to prove that, more likely than not, the Postal Services [sic] articulated reasons for its actions [that] were a pretext for discrimination. Therefore your claim of intentional discrimination based on disability fails.

### 3. Plaintiff Has Failed to Carry His Burden

Plaintiff maintains that defendants made changes to his clock rings as a means "for falsifying the work, work hours, [defendants'] unsafe practices, their harassment and discrimination." Opposition, at p. 12. However, as before the EEOC, plaintiff has failed to

direct the court to any evidence refuting defendants' legitimate nondiscriminatory explanations for the challenged conduct.

### a. Lunch Breaks

Plaintiff asserts generally that defendants clocked him out for lunches he did not take in "November/December '04." SAC, ¶ 9. However, the Investigative Report notes lunch changes only on November 8, 15 and 20, 2004,[7] consistent with plaintiff's assertion in his Opposition that "[i]nappropriate Lunches were inserted in between the clock rings" on "November 8, 2004, November 15, 2004, November 20, 2004 and other days" (Opposition, at p. 4). See also, Exh. 39 to Plaintiff's Deposition, at pp. 4, 7, and 9. See generally, TR. at 202:19 - 210:7. The court therefore addresses only these November 2004 dates.[8]

Since the contested lunch periods are one-half hour in length (TR. at 204:20-23), at issue is a total of 1.5 hours for which plaintiff claims defendants inserted lunches that plaintiff did not take and for which he should be compensated. Plaintiff claims that on these days he

---

[7] The EEOC Investigative Report includes a TACS report summarizing plaintiff's time sheets dated October 30, 2004 to January 12, 2005, noting clock ring changes on the following eleven days. Defendants' Motion, Appendix 1, Exhibit A, Report at p. 7:

| | |
|---|---|
| 10/31/04: | Deleted 6:29 BT |
| 11/08/04: | Add OL/IL .50 |
| 11/13/04: | Deleted 6:45 MV |
| 11/15/04: | Add OL/IL .50 |
| 11/17/04: | Deleted 7:25 BT |
| 11/18/04: | Inserted MV 08:00, 08:33 |
| 11/19/04: | Inserted MV 09:24, 13:45 |
| 11/20/04: | Add OL/IL .50 – Deleted 11:47 MV |
| 12/09/04: | Deleted 8:54 BT |
| 12/10/04: | Deleted 0:900 BT; 09:31 MV |
| 12/16/04: | Deleted 0:800 MV; 08:25 MV |

BT refers to "Begin Tour" (TR at 168:18-20); "MV" refers to a employee's "move" from one task to another (TR. at 189:18 - 191:16); "IL" refers to "In Lunch," and "OL" refers to "Out Lunch" (TR at 203:3-10). Times given are "military time." TR. at 168:15. See also, Exhibit 39 to Plaintiff's Deposition (complete time sheets for period 12-6-04 to 3-3-05).

[8] The record does not include plaintiff's complete time sheets for these dates, only what is provided in the above-noted excerpt from the Investigative Report (n. 7, supra).

worked more than eight hours and defendants' actions were intended to deny plaintiff overtime

compensation.  Opposition, at p. 12.  Plaintiff claims this action was discriminatory because he

does not believe such changes were made to the time sheets of other employees.  TR. at 222:1-8.

Plaintiff has submitted no evidence to support his assertion he was singled out by

defendants.  Plaintiff testified in deposition that he had not submitted the requisite "no lunch"

forms on the contested dates, although he stated he was then unaware of the pre-approval

requirement.  TR. at 207:16-24, 209:7-23, 212:22-213:7.  However, plaintiff's asserted lack of

awareness of this policy, even if true, does not render defendants' enforcement of the policy

discriminatory.  Moreover, as documented by the EEO investigator, Postal Service management

has the discretion to make and enforce – albeit nondiscriminatorily – operational decisions.[9]  This

managerial discretion, coupled with plaintiff's lack of evidence rebutting the EEOC's finding

that any changes to plaintiff's clock rings were corrective only, renders unmeritorious plaintiff's

challenge to the insertion of three lunch breaks.

b.  Begin Time

Although omitted from plaintiff's Second Amended Complaint, and not apparent

in the available administrative documents (but alleged in plaintiff's initial complaint (at p. 3)),

plaintiff contends in his opposition that, "The begin time for November 13, 2004, was

manipulated, it should be with begin time 5:00 A.M.  The defendants agreed to put back the time

but did not stick to the word instead added and deleted a later date."  Opposition, at p. 4.

Plaintiff cites to no evidence in the available record, which appears not to include a copy of

plaintiff's November 13, 2004 time sheet.  The summary of plaintiff's time sheets noted in the

Investigative Report (see n. 7, supra) does not reference a begin-time change on that date, only a

_____

[9]  The pertinent Postal Service rule, set forth in Article 3 ("Management Rights") of the
"Agreement Between the USPS and the National Letter Carriers" provides:  "The Employer shall
have the exclusive right . . . [t]o maintain the efficiency of the operation entrusted to it [and] . . .
[t]o determine the methods, means, and personnel by which such operations are to be
conducted."  Investigative Report, at p. 8.

1   "move").  Plaintiff's lack of evidence demonstrating a change in begin time on November 13,

2   2004, or any evidence of discrimination, fatally undermines this challenge.

3                          c. Operational Codes

4              Although omitted in the Second Amended Complaint, plaintiff claims in his

5   opposition to the instant motion (at pp. 4-7), as in his original complaint (at pp. 2-3), that

6   defendants improperly altered his clock rings to reflect tasks other than those he performed, and

7   to inaccurately reflect his movement from one task to another.  See generally, TR at 157:9 -

8   159:25, 222:8-225:8, 250:1-251:23.  Plaintiff's opposition states that he was required to clock in

9   as a 722 but changes were made to reflect codes 743 and 544.  Opposition, at p. 5.  Labor

10  Relations Specialist Noah Rodriquez has explained that all 700-series operation codes reflect

11  mail carrier positions[10] (neither Mr. Rodriquez nor plaintiff explain the 544 code) and, as set

12  forth above, Ms. Wing has explained that managerial changes to operational codes were made

13  only to reflect the work actually performed.  Plaintiff has submitted no evidence demonstrating

14  that the challenged operational codes reflect inappropriate tasks or evidence refuting the EEOC

15  finding that the managerial changes to plaintiff's operational codes were made only for the

16  purpose of correcting inaccuracies.

17                          d. Assigned Tasks

18             The Second Amended Complaint alleges that defendants improperly reduced

19  plaintiff's work hours and assigned him to tasks requiring heavy lifting.  SAC, ¶¶ 13, 14.  In

20  addition, plaintiff claims that he was given administrative tasks for which he should have

21  received increased pay.

22  \\\\\

23

24         [10]  See also the Declaration of Labor Relations Specialist Noah Rodriquez, at ¶ 4, who
    states that all "700" operational codes "pertain to carrier operations, and none are managerial or
25  supervisorial in nature."  Mr. Rodriquez has attached a list of the 700-series operation codes as
    his Exhibit A.  Although no mention is made of the 544 operation code challenged by plaintiff,
26  neither does plaintiff attempt to explain its meaning.

Plaintiff does not identify which operational code, if any, required heavy lifting – or which assigned task, even if uncoded, required greater exertion than that for which he was medically authorized.  In contrast, the Investigative Report sets forth plaintiff's hours and work restrictions consistent with his medical limitations.[11]

The only reduction in work hours plaintiff notes – prior to leaving work – is that Mr. Hoffman sent him home due to a lack of work on December 9, 2004.[12]  However, since plaintiff was offered and accepted work within his restrictions the following day, this allegation fails to create a reasonable inference of disability discrimination.

Plaintiff also claims a reduction in his work hours pursuant to his post-departure requests for leave with pay.  However, the Postal Service's Injury Compensation Specialist,

---

[11]  The Investigative Report, at pp. 6-7, provides:

- Commencing December 10, 2004, plaintiff's reporting time was 7:00 a.m. with up to 8 hours work per day, assigned to administrative tasks within the following limitations: no bending, pushing/pulling, twisting, climbing or reach about shoulder level; lifting limited "up to 5 pounds" on an intermittent basis not to exceed a total of 5 hours per day.
- Commencing December 15, 2004, same physical restrictions, but reporting time changed to 9:30 a.m. with up to 8 hours work per day.
- Commencing December 29, 2004, same physical restrictions, but reporting time changed to 11:00 a.m. with up to 8 hours work per day.
- Commencing January 15, 2005, same physical restrictions, but reporting time changed to 12:30 p.m. with up to 6 hours work per day.

[12]  In his Second Amended Complaint, plaintiff states (at p. 3):

¶ 12.  On or about 12/09/2004, plaintiff was told that there were no less physically demanding tasks and was sent home by the defendant United States Postal Service.  On or about 12/10/2004, defendant United States Postal Service gave plaintiff an offer letter for less physically demanding administrative tasks.  The offer letter was signed and accepted by the plaintiff. [Plaintiff does not direct the court to a copy of the referenced letter, and the court has been unable to locate it in the record.]

Similarly, in his opposition, plaintiff alleges that on December 9, 2004, Mr. Hoffman shouted at him, asked him when he was going to have surgery, stated there was no work for plaintiff and asked him to clock out and go home.  Plaintiff alleges that on December 10, 2004, his clock rings for December 9 "were modified to manipulate and cover the harassment & discrimination defendants caused," and plaintiff was offered and accepted modified employment tasks. Opposition, at pp. 4-5.

1  Colleen Mosca, has filed a declaration explaining why she was required to limit plaintiff's claims

2  to 35 hours per week,[13] and plaintiff has neither refuted this explanation nor provided any support

3  for his contention that these changes were discriminatory.

4        Finally, plaintiff claims that his modified tasks were administrative (SAC, at ¶ 12)

5  and that he therefore should have been promoted to a "204B" supervisor position with increased

6  grade and pay.  Opposition, at pp. 4-5, citing generally Exhibit 39 to Plaintiff's Deposition (time

7  sheets).  Plaintiff avers that his supervisor, Annette Wing, was once a similarly situated employee

8  so promoted, but Ms. Wing's declarations persuasively aver that plaintiff's administrative tasks

9  did not warrant increased pay, that plaintiff was ineligible for supervisorial promotion, and that

10  she and plaintiff were not similarly situated.[14]  Accordingly, the court finds that plaintiff has

---

11

12      [13]  Ms. Mosca explained that plaintiff was entitled to a maximum of 35 hours per week
for purposes of his application for "continuation of pay" ("COP"), pursuant to the formula set
13  forth in 5 C.F.R. § 10.216(b)(2).  See Mosca Decl. at pp. 1-2.

14      [14]  Ms. Wing stated (Wing Decl.  at p. 3):

15    8.    Plaintiff was not entitled to a higher rate of pay when he moved from performing
"clerk" tasks to performing "administrative" tasks, as reflected by the task codes
16  on his clock ring records.  His base pay as a part-time flexible letter carrier is what
he was suppose[d] to be paid, regardless of which job function he performed,
17  unless he was in a supervisory capacity, which he was not.

18    9.    Plaintiff did not qualify for a 204B supervisor position because he did not have
sufficient time in service.  To qualify for a 204B supervisor position, an employee
19  has to have a minimum of one year in service as a permanent employee.
Generally, part-time flexible letter carriers, as was plaintiff, are not accepted for
20  204B supervisor positions.

21  Ms. Wing further stated (Supp.Wing Decl.  at pp. 1-2):

22    1.    ...From 2004- 2006 I was a 204B supervisor at the Fort Sutter Post Office
...
23    3.    A 204B supervisor is a letter carrier, clerk or other craft employee who is
temporarily detailed to a supervisor position and functions as a supervisor
for the term of the detail.
24    4.    When I was made a 204B supervisor at the Fort Sutter Post Office, I had to
formally apply for it, await for an available opening, and then be selected
25  for it by the Post Office Manager.
  5.    My being made a 204B supervisor was not in conjunction with, in relation
26  to, or as a result of my suffering from any kind of injury.

1  submitted no probative evidence demonstrating a discriminatory change in plaintiff's work

2  hours, tasks or pay.

3                                e.  Additional Contentions

4          Plaintiff's remaining contentions challenging the resolution of his disability

5  discrimination claim reference several pages of his Injury Compensation File, although only a

6  fraction of these are included as exhibits to plaintiff's deposition transcript; plaintiff has

7  submitted no evidence on his own.  The court examines only those contentions for which there is

8  some evidence in the record.

9          Plaintiff cites Injury Compensation File SRT 000184 through SRT 000189 in

10  support of his contention that Injury Compensation Specialist Colleen Mosca "retaliated" against

11  plaintiff  "by making improper statements on his CA-7 and Day-By-Day Breakdown sheet."

12  Opposition, at p. 6.  Available are Injury Compensation File SRT 000184 through SRT 000187,

13  demonstrating plaintiff was accorded leave without pay for the period December 28, 2004 to

14  February 4, 2005, and that he was informed his request to receive compensation for this period

15  would not be granted absent medical evidence consisting of "a detail[ed] report with examination

16  and objective findings with medical rationale to support temporary total disability . . . . [that]

17  back dated medical reports [will not support] total temporary disability."  TR at Exh. 5, 7, and

18  11.  Plaintiff also cites Injury Compensation File SRT 000171 and SRT 000179 in support of his

19  related contention that on March 3, 2005, Ms. Mosca improperly rejected the opinion of Dr.

20  Chatterjee on the ground that he was an "unauthorized" physician providing "unauthorized"

21  medical documentation.  Plaintiff cites the same documents in support of his allegation that Mr.

22  Hoffman misstated on March 4, 2005 that neither he nor the Injury Compensation Specialist had

23  received Dr. Chatterjee's report.  Opposition, at p. 8.  These exhibits contain Ms. Mosca's March

24  3, 2005 rejection of Dr. Chatterjee's one-line assessment that plaintiff should be given "no work

25  until surgery" (at Exh. 7), effective February 18, 2005, and received by fax on February 22, 2005.

26  \\\\\

1        This evidence does not raise a reasonable inference of discrimination.  Not only

2   did Dr. Chatterjee's follow-up letter to Ms. Mosca state that plaintiff could perform desk work

3   with a five-pound lifting limit, ten pounds occasionally (Exhs. 35 and 36), but Ms. Mosca states

4   that she was authorized by 20 C.F.R. § 10.506 (employer may monitor employee's medical care)

5   to seek further information from Dr. Chatterjee.  See also, 20 C.F.R. § 10.501 (employee

6   responsible for providing supporting medical evidence); and § 10.502 (employer may send

7   employee to "referee examinor" whose opinion will be given special weight).  Mr. Hoffman's

8   purported statement that this information had not been received demonstrates a lack of

9   information on his part or even harassment, but neither possibility raises a reasonable inference

10  of disability discrimination.

11       Thus, plaintiff's numerous allegations before this court of disability

12  discrimination, focusing on defendants' changes to plaintiff's clock rings and assigned work

13  tasks, do not present a genuine issue of material fact as to whether defendants' actions were

14  pretextual.  Plaintiff has failed even to establish a prima facie case of disability discrimination.[15]

15       Accordingly, defendants' motion for summary judgment on plaintiff's disability

16  discrimination claim should be granted.  See Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th

17  Cir. 1994) ("The plaintiff must do more than establish a prima facie case and deny the credibility

18  of the defendants' witnesses") (internal quotations and citations omitted).

19  \\\\\

20

---

21       [15] Although plaintiff asserts his operable hernia met the criteria for "disability" under the
    Rehabilitation Act, the case law appears to be to the contrary.  See, e.g., Johnson v. City and
22  County of San Francisco, 2001 WL 263298, *4 (N.D. Cal. 2001) and citations therein (finding
    hernia not a "disability" under the ADA because it was a temporary condition that could be
23  corrected with surgery and plaintiff failed to show it substantially limited a major life activity, as
    statutorily defined).  See also, Hudson v. Chertoff, ___ F. Supp. ___, 2007 WL 2288062, *5
24  (W.D. Wash. 2007) (declining to find plaintiff's knee injury a "disability" under the ADA
    because plaintiff failed to demonstrate it "was anything more than a temporary condition that
25  would cease to hinder his ability to perform the functions of his job once his treatment was
    complete").  In the instant case, plaintiff took another job within six weeks of claiming he was
26  totally incapacitated without surgery, which plaintiff nonetheless continued to forego.

1    E.  Title VII Claims

2        Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,  makes it

3    illegal for an employer "to discriminate against any individual with respect to his compensation,

4    terms, conditions, or privileges of employment, because of such individual's race, color, religion,

5    sex, or national origin."  42 U.S.C. S 2000e-2(a)(1).  With respect to federal employees and

6    applicants for federal employment, "[a]ll personnel actions . . . shall be made free from any

7    discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. S 2000e-16(a).

8    The Ninth Circuit also recognizes federal employee claims of retaliation in response to making a

9    claim of discrimination.  See Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000) ("A postal

10   employee may bring suit under § 2000e-3(a)[16] pursuant to 42 U.S.C. § 2000e-16.  See Ayon v.

11   Sampson, 547 F.2d 446, 450 (9th Cir.1976) ['We conclude that in enacting § 2000e-16, Congress

12   intended to, and did incorporate into that section the provisions of the Civil Rights Act

13   prohibiting harassment or retaliation for the exercise of those remedial rights established by the

14   Act.']") But see, Gomez-Perez v. Potter, ___ S.Ct. ___, 2008 WL 2167189, *19, n. 4 (May 27,

15   2008) (declining to reach question whether Title VII's federal-sector prohibition of

16   discrimination extends to retaliation).  Accordingly, within this Circuit, plaintiff's right to file a

17   retaliation claim is without question.

18       Plaintiff initiated his Title VII claim by making a September 7, 2005 request for

19   appointment with a Dispute Resolution Specialist, followed by the September 15, 2005 filing of a

20   formal Pre-Complaint Counseling Request, wherein plaintiff alleged retaliation in response to

21   filing his disability discrimination claim.  The alleged retaliatory conduct was Mr. Hoffman's

22   denial of plaintiff's request for leave without pay and acceptance of plaintiff's alternative offer of

23

24       [16] Title 42, U.S.C. § 2000e-3 makes it an unlawful employment practice for an employer
     to discriminate against an employee because that employee "has opposed any practice made an
25   unlawful employment practice by this subchapter, or because he has made a charge, testified,
     assisted, or participated in any manner in an investigation, proceeding, or hearing under this
26   subchapter."  42 U.S.C. § 2000e-3(a).

resignation.[17]  Although these actions were set forth in Mr. Hoffman's June 22, 2005 letter, plaintiff designated September 6, 2005 as the date of discrimination, referencing his receipt of a "notice of personnel action" and "cancellation of full-time employment action."[18]

Following a "Final Interview" by an EEO Specialist and issuance of a neutral "Notice of Right to File a Formal Complaint," plaintiff filed a formal Complaint of Discrimination on October 21, 2005, broadening the scope of his Title VII allegations to encompass discrimination based on race, color, religion, national original, and disability, as well as retaliation, and expanding the dates of the alleged discrimination to "09/06/05 and many other dates before that."

On November 30, 2005, the Postal Service's EEO Office issued a final agency decision dismissing plaintiff's complaint as untimely because plaintiff had not sought contact with an EEO counselor within the 45-day deadline of 29 C.F.R. §1614.105(a); see also, 29 C.R.F. § 1614.107(a)(2) (agency required to dismiss untimely complaints).  Plaintiff filed this action rather than seek further review from the EEOC.

_____

[17]  Plaintiff's Pre-Complaint Counseling Request claims in full:

On 09/06/05, 2005.  Although "Leave without Pay" was approved upon on receipt of my letter requesting to grant me "LWOP" or to put me on inactive status or accept resignation dated 03/15/05 Michael A. Hoffman denied the approved LWOP based on unreasonable reasons and I am being forced out to resign and sent with notice of Personal Action mentioning "Employee Resigned" and also received cancellation of fulltime employment action. [Sic]

Plaintiff has presented no evidence supporting his statement that his request for leave without pay was initially approved.

[18]  In his Opposition, plaintiff provides only the following in explanation of his choice of dates (Opposition, at p. 9):

September 06 2005
The plaintiff received notification of personnel action
        i) Effective date – 03-18-2005
Last day in pay status 02-06-2005
        ii) Effective date – 03-19-2005
        iii) Effective date – 03-19-2005 states that employee resigned effective
        3/18/2005

1      Defendants contend this court should not reach the substance of plaintiff's Title

2   VII retaliation claim because his pre-complaint counseling request was untimely.  Plaintiff's

3   Opposition is nonresponsive other than stating that he "kept the OFO/EEOC informed," that

4   defendants' argument is "deceptive," and plaintiff should not be "blamed or sent back to EEOC."

5   Opposition, at p. 13.

6      29 C.F.R. §§ 1614.105(a)(1) provides in full:

7      (a)  Aggrieved persons who believe they have been discriminated against on the
        basis of race, color, religion, sex, national origin, age or handicap must consult a

8      Counselor prior to filing a complaint in order to try to informally resolve the
        matter.

9
       (1)      An aggrieved person must initiate contact with a Counselor within

10              45 days of the date of the matter alleged to be discriminatory or, in
                the case of personnel action, within 45 days of the effective date of

11              the action.

12      The Supreme Court has construed the filing requirements of Title VII to be

13   nonjurisdictional but rather to provide limitations periods subject to equitable tolling.  "We hold

14   that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to

15   suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver,

16   estoppel, and equitable tolling."  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102

17   S.Ct. 1127, 1132 (1982).  "[C]ompliance with the forty-five day time limit in § 1614.105(a)(1) is

18   not a jurisdictional requirement for filing suit under Title VII.  As a result, the district court

19   should [] analyze[] defendant's motion to dismiss under Rule 12(b)(6), instead of under Rule

20   12(b)(1).  And, because evidentiary matters outside of plaintiff's complaint [are] presented to the

21   district court, the court should [] treat[] defendant's motion as a motion for summary judgment

22   under Rule 56.  See Fed. R. Civ. P. 12(b)."  Beene v. Delaney, 70 Fed. Appx. 486, 490, 2003 WL

23   21480698,*3 (10th Cir. 2003), citing Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320,

24   1324-26 (10th Cir. 2002).

25   \\\\\

26   \\\\\

1    The parties disagree on the "date of the matter alleged to be discriminatory,"[19]

2    the EEO Office and defendants construing it as Mr. Hoffman's June 22, 2005 letter denying

3    plaintiff's request for leave without pay and accepting his offer of resignation, while plaintiff

4    seeks to apply September 6, 2005, the date he received personnel notification of the same

5    information.  Plaintiff does not, however, proffer any basis for the distinction.  This problem is

6    underscored by the wording of plaintiff's counseling request itself, focusing on the actions of Mr.

7    Hoffman and merely referencing the subsequent notification sent by personnel.  Thus, plaintiff

8    has presented no basis for reconsidering the final agency determination that the "date of the

9    matter alleged to be discriminatory" was Mr. Hoffman's June 22, 2005 letter, rendering untimely

10   plaintiff's counseling request filed seventy-seven days later.[20]

11   Nonetheless, an agency must extend the 45-day time limit "when the individual

12   shows that he or she was not notified of the time limits and was not otherwise aware of them,

13   that he or she did not know and reasonably should not have been known that the discriminatory

14   matter or personnel action occurred, that despite due diligence he or she was prevented by

15   circumstances beyond his or her control from contacting the counselor within the time limits, or

16   for other reasons considered sufficient by the agency or the Commission."  29 C.F.R. §

17   1614.105(a)(2).  However, plaintiff asserts none of these grounds in support of the timing of his

18   pre-complaint counseling request and the record does not reveal any.

19   \\\\\

20

21   [19]  Neither party asserts the pertinent date is the "effective date of the [personnel] action,"
     which in this case would be March 18, 2005, the effective date of plaintiff's resignation.

22

23   [20]  Even had plaintiff's request been timely, he has presented no evidence demonstrating
     Mr. Hoffman's actions were discriminatory.  To the contrary, Mr. Hoffman did not accept
24   plaintiff's offer of resignation until well after plaintiff had accepted other employment.  Plaintiff
     commenced employment with San Quentin prison within a week of sending his letter to Mr.
25   Hoffman requesting leave without pay or the acceptance of his resignation.  While plaintiff states
     that this employment consisted of tasks within his physical limitations and thus demonstrates he
26   was sincere in his efforts to perform modified work tasks rather than merely to seek paid leave
     from defendants, he has submitted no evidence in support of this statement.

31

1    Accordingly, the court finds no basis for reconsidering the decision of the EEO

2  Office dismissing plaintiff's Title VII retaliation discrimination complaint because untimely

3  under 29 C.F.R. §1614.105(a).  See also, 29 C.R.F. § 1614.107(a)(2) (agency required to dismiss

4  untimely complaints).  The court does not, therefore, reach the merits of plaintiff's retaliation or

5  later-alleged Title VII claims, upon which defendants should be granted summary judgment.

6    F.  Federal Privacy Act Claims

7    Plaintiff alleges violation of his rights under the Federal Privacy Act, 5 U.S.C. §

8  552a(e), against defendant Postal Service only, "in that [its] systems of records . . . were known

9  to contain false and inaccurate statements concerning the hours of work of the plaintiff, in

10  violation of [its] duty . . . to maintain individually identifiable records concerning the plaintiff

11  with accuracy."  Second Amended Complaint, ¶ 28.  Plaintiff appears to allege a violation of §

12  552a(e)(5), which requires federal agencies to "maintain all records which are used by the agency

13  in making any determination about any individual with such accuracy, relevance, timeliness, and

14  completeness as is reasonably necessary to assure fairness to the individual in the determination."

15  Plaintiff claims generally that the Postal Service's maintenance of plaintiff's employment records

16  caused him "economic harm, as well as emotional distress."  Plaintiff seeks to enjoin the Postal

17  Service "from the conduct outlined herein" and seeks both statutory and special damages.

18    An individual may bring a civil action against an agency that fails to comply with

19  the statutory requirements of the Federal Privacy Act, which is part of the broader Freedom of

20  Information Act, provided the individual has exhausted administrative remedies and/or can

21  demonstrate adverse effect.  See 5 U.S.C. § 552a(g)(1).[21]  Defendant contends that plaintiff has

22

23    [21] 5 U.S.C. § 552a(g)(1) provides:  "Civil remedies--Whenever any agency

24    (A)    makes a determination under subsection (d)(3) of this section not to amend
         an individual's record in accordance with his request, or fails to make such
         review in conformity with that subsection;

25    (B)    refuses to comply with an individual request under subsection (d)(1) of
         this section;

26    (C)    fails to maintain any record concerning any individual with such accuracy,

1  failed to demonstrate exhaustion of administrative remedies or adverse effect.

2          Challenges to access, accuracy or amendment of federal agency records must be

3  administratively exhausted before they may be pursued in federal court.[22]  5 U.S.C. § 552a(g)(1);

4  see, e.g., Hill v. U.S. Air Force, 795 F.2d 1067, 1069 (D.C. Cir. 1986); Hewitt v. Grabicki, 596

5  F. Supp. 297, 303 (D.C. Wash. 1984).  Plaintiff's challenge to the accuracy of his Postal Service

6  employment records comes squarely within the Act's requirement of administrative exhaustion.

7  Defendants have submitted the declaration of Jane G. Eyre, Manager of the Records Office at the

8  Postal Service's Washington, D.C. headquarters, who states that plaintiff made no administrative

9  inquiries or requests concerning his employment records.  Eyre Decl. (Attchmt. to Defendants'

10 Motion).  Plaintiff's response that he sought to obtain correction of his records pursuant to his

11 EEOC disability case[23] does not satisfy the exhaustion requirement of the Privacy Act.  Thus,

12

13          relevance, timeliness, and completeness as is necessary to assure fairness
            in any determination relating to the qualifications, character, rights, or
            opportunities of, or benefits to the individual that may be made on the

14          basis of such record, and consequently a determination is made which is
            adverse to the individual; or

15    (D)   fails to comply with any other provision of this section, or any rule
            promulgated thereunder, in such a way as to have an adverse effect on an

16          individual,

17 the individual may bring a civil action against the agency, and the district courts of the United
   States shall have jurisdiction in the matters under the provisions of this subsection."

18

19    [22]  The pertinent administrative remedies are as follows:  request to view records (5
   U.S.C. § 552a(d)(1)); request for amendment of records (§ 552a(d)(2)); if the agency denies the
20 request for amendment, seek review of the denial to the agency head (§ 552(d)(3)); if the decision
   on review is adverse, the individual may seek judicial review of the final agency decision (§
21 552a(g)(1)(D)).  Requests are to made pursuant to the requirements of 39 C.F.R. § 266.6(a)(1)
   (requiring, for example, that requests be made to "Manager, Records Office, U.S. Postal Service,
22 475 L'Enfant Plaza SW, Washington, DC 20260").EEOC Case No. 4F-956-0032-05

23    [23]  Plaintiff has responded to defendants' contention as follows: "With regards to the
   Privacy Act and the administrative remedy, the plaintiff requested several times that his record be
24 maintained correctly by removing unrelated and falsifying information beginning with his time
   records (refer to defendants' evidence EEO Case 4F-956-0032-05, Investigative Report
25 SRT000333 and so forth).  The requests to the administration to correct and maintain his records
   began in November/December of 2004 before even the informal complaints with
26 EEOC began and nothing but negligence, harassment and discrimination was experienced as
   observed."  Opposition, p. 14.

1  even assuming plaintiff's employment records contain inaccuracies (which plaintiff has failed to

2  demonstrate, for the reasons set forth supra), his failure to exhaust administrative remedies

3  precludes this court's review.

4        However, "exhaustion of administrative remedies is not a precondition to bringing

5  an action for *damages* under the Privacy Act.  Compare § 552a(g)(1)(A) (action for order to

6  amend record permitted when agency review resulted in denial of request or agency refused to

7  review) with § 552a(g)(1)(C) (permits action where agency's failure to maintain proper records

8  results in adverse determination against individual)."  Hewitt v. Grabicki, 794 F.2d 1373, 1379

9  (9th Cir. 1986) (emphasis added).  To obtain damages, plaintiff must demonstrate he suffered an

10  "adverse effect" in the form of actual damages as a result of defendants' record-keeping.  5

11  U.S.C. § 552a(g)(1)(C), (D); see Doe v. Chao, 540 U.S. 614, 627, n. 12 and related text, 124 S.

12  Ct. 1204 (2004) (requiring demonstration of actual damages but not reaching question whether

13  this may include mental anguish without out-of-pocket loss).

14        Plaintiff asserts generally he suffered "economic harm, as well as emotional

15  distress," Second Amended Complaint, ¶ 29, but he has directed the court to no evidence in

16  support of these claims.  Defendants' evidence, on the other hand, includes the EEOC's May 18,

17  2006 final decision on plaintiff's disability claim, wherein the EEOC found "no effect on

18  [plaintiff's] pay" and "no[] effect whatsoever on any term or condition of [plaintiff's ]

19  employment."  Thus, plaintiff has failed to make any showing of economic harm or a sufficient

20  showing of emotional distress as a result of defendant Postal Service's alleged inaccuracies in

21  plaintiff's employment records, matters essential to plaintiff's Privacy Act damages claim and on

22  which plaintiff would bear the burden of proof at trial.  Celotex, 477 U.S. at 322.

23        Accordingly, defendants should be granted summary judgment on plaintiff's

24  Privacy Act damages claims.  Fed. R. Civ. P. 56.  Plaintiff's action to correct or change his

25

26

1   employment records should be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P.

2   12(b)(1).

3           G.  The Fair Labor Standards Act

4           Plaintiff contends generally that "[b]y the above course of conduct, defendant

5   United States Postal Service has violated the FLSA willfully."  Second Amended Complaint, ¶

6   24.  This contention appears to focus on plaintiff's allegation he was not paid overtime

7   compensation for lunch periods deleted by his supervisors, nor the higher rate of pay he alleges

8   he was entitled to for performing administrative tasks.

9           "An employee seeking to recover unpaid minimum wages or overtime under the

10  FLSA 'has the burden of proving that he performed work for which he was not properly

11  compensated.'"  Brock v. Seto, 790 F.2d 1446, 1447-1448 (9th Cir. 1986), quoting Anderson v.

12  Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S.Ct. 1187 (1946).  "[A]n employee has carried

13  out his burden if he proves that he has in fact performed work for which he was improperly

14  compensated and if he produces sufficient evidence to show the amount and extent of that work

15  as a matter of a just and reasonable inference."  Mt. Clemens Pottery, 328 U.S. at 687.

16  Once the employees establish a prima facie case, the burden shifts to the employer to come

17  forward with evidence of the precise amount of work performed or evidence to negate the

18  reasonableness of the inference to be drawn from the employees' evidence.  McLaughlin v. Ho

19  Fat Seto, 850 F.2d 586, 589 (9th Cir. 1988), citing Mt. Clemens Pottery, 328 U.S. at 687-88.

20          Since plaintiff has failed to demonstrate that he performed work for which he was

21  not properly compensated, he has failed to establish a prima facie case under FLSA.

22  Accordingly, defendants are entitled to summary judgment on this claim.

23  VI.  CONCLUSION

24          For the reasons stated above, IT IS HEREBY ORDERED that:

25          1.  Plaintiff's motion to strike his deposition transcript is denied; and

26  \\\\\\

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

1. The  Office of Workers' Compensation Program ("OWCP") and  Equal Employment Opportunity Commission ("EEOC") should be dismissed from this action pursuant to Fed. R. Civ. P. 12(b)(1);

2. Plaintiff's Fourteenth Amendment Equal Protection claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6);

3. Defendants should be granted summary judgment on plaintiff's Rehabilitation Act claims pursuant to Fed. R. Civ. P. 56;

4. Defendants should be granted summary judgment on plaintiff's Title VII claims pursuant to Fed. R. Civ. P. 56;

5. Plaintiff's records amendment claim under the Privacy Act should be dismissed for lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)), while summary judgment should be entered on behalf of defendants on plaintiff's damages claims under the Privacy Act (Fed. R. Civ. P. 56);

6. Summary judgment should be granted on behalf of defendant on plaintiff's claims under the Fair Labor Standards Act;

7. Judgment should be entered for defendants, and this case closed.

These findings and recommendations are submitted to the District Judge assigned to this case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that

\\\\\

\\\\\

\\\\\

1  failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: 06/24/08

4                                                    /s/ Gregory G. Hollows

5                                                    GREGORY G. HOLLOWS
                                                     U. S. MAGISTRATE JUDGE

6  GGH5:Tangirala0384.f&r.III

37